# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| DOUGLAS A. KELLEY, *in his capacity as the Trustee of the PCI Liquidating Trust,* | Civil No. 20-642 (JRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| SAFE HARBOR MANAGED ACCOUNT 101, LTD., | |
| Defendant. | |

---

Shira R. Isenberg and Neal H. Levin, **FREEBORN & PETERS LLP**, 311 South Wacker Drive, Suite 3000, Chicago, IL 60606; Stacey A. Broman, **MEAGHER & GEER, PLLP**, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, for plaintiff.

Michael C. Markham, Frank R. Jakes, and Angelina E. Lim, **JOHNSON POPE BOKOR RUPPEL & BURNS, LLP**, 401 East Jackson Street, Suite 3100, Tampa, FL 33602; Thomas C. Atmore, **LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD.**, 100 South Fifth Street, Suite 2500, Minneapolis, MN 55402, for defendant.


Plaintiff Douglas A. Kelley filed this action against Defendant Safe Harbor Managed Account 101, Ltd. ("Safe Harbor") to recover $6,898,923.39 from Safe Harbor as a subsequent transferee of Arrowhead Capital II, L.P. ("Arrowhead"). Kelley's action comes after a Bankruptcy Court entered default judgment against Arrowhead and avoided approximately $1 billion in transfers Arrowhead received from Metro I, LLC (formerly

known as Metro Gem Capital, LLC and hereinafter "Metro"), including the funds Arrowhead later transferred to Safe Harbor, as part of the multi-billion-dollar Ponzi scheme orchestrated by Tom Petters.  On March 30, 2020, Safe Harbor filed a Motion for Summary Judgment arguing that no genuine dispute of fact remains and it is entitled to judgment as a matter of law because (1) Safe Harbor is immune pursuant to § 546(e) of the Bankruptcy Code; (2) Kelley's claim is time-barred pursuant to Delaware's three-year statute of repose; and (3) the "good faith" exception pursuant to § 550(b) shields Safe Harbor from Kelley's claims.  Because the Court finds § 546(e) immunity applies, the Court will grant Safe Harbor's Motion.

## BACKGROUND

### I.  THE PARTIES AND RELEVANT NON-PARTIES

Plaintiff Douglas A. Kelley is the Trustee of the PCI Liquidating Trust established pursuant to the bankruptcy proceedings in *In re Petters Company, Inc. et al.*, Case No. 08-45257.  (Compl. at 1, Mar. 3, 2020, Docket No. 1-1.)

Defendant Safe Harbor is a Florida limited partnership used as an individual investment vehicle.  (*Id.* ¶ 8.)

The Petters Company, Inc. ("PCI") is a Minnesota corporation wholly owned by Tom Petters.  (*Id.* ¶¶ 1–2.)

Metro is a special purpose entity for PCI and is organized under the laws of Delaware with its principal place of business in Minnesota.  (*Id.* ¶¶ 6–7.)

Arrowhead is a Delaware corporation offering "private placement" investments with its principal place of business in Minnesota.[1]  (*Id.* ¶ 4; *see also* Decl. of Michael C. Markham ("Markham Decl."), Ex. 2 at 16, Mar. 30, 2020, Docket No. 22-2.)

## II.    THE EVENTS LEADING TO THIS ACTION

In 2002, Safe Harbor invested $6 million in Arrowhead.  (Decl. of Dean G. Tanella ("Tanella Decl.") ¶¶ 2–3, Mar. 30, 2020, Docket No. 23.)  Safe Harbor decided to invest in Arrowhead after reviewing Arrowhead's Private Placement Memorandum and having telephone conversations with Arrowhead's General Partner/CEO, Jim Fry.[2]  (*Id.* ¶ 4; Markham Decl., Ex. 2 at 16–86.)   The Private Placement Memorandum included a directory listing Wells Fargo Bank Minnesota, N.A., as Arrowhead's "custodian and collateral agent" and various other legitimate firms as auditors, legal advisors, and administrative agents of the Arrowhead private placement fund.  (Markham Decl., Ex. 2

---

[1] A "private placement" is a securities offering exempt from registration with the Securities and Exchange Commission and regulatory review. *Investor Bulletin: Private Placements Under Regulation D*, U.S. Securities and Exchange Commission, Sept. 24, 2014, https://www.sec.gov/oiea/investor-alerts-bulletins/ib_privateplacements.html.

[2] A "private placement memorandum" is a document "that introduces the investment and discloses information about the securities offering and the issuer." *Id.*  The absence of such a document "may be a red flag to consider before investing," though government regulators do not review private placement memorandums even if they do exist.  *Id.*

at 19.)  Arrowhead also provided Safe Harbor with an "Independent Auditors' Report," which stated that an auditing firm identified in the Private Placement Memorandum had reviewed Arrowhead's financial statements and that the firm concluded Arrowhead's financial position was fairly presented.  (*Id.* at 19, 90.)

The Private Placement Memorandum stated that Arrowhead's goal was to give investors an advantageous return on investment by "purchasing short-term, secured notes relating to financing of pre-sold, new name-brand products." (*Id.* at 23.)  To achieve this, Arrowhead entered into a separate Note Purchasing Agreement with Metro.  (*Id.*) Per the Private Placement Memorandum, Arrowhead investors would wire money to Wells Fargo where it would be held in escrow in a cash account until Fry directed the funds to be moved to a "collateral account" to be used for purchasing new Notes from Metro per the terms of the separate Note Purchasing Agreement.  (*Id.* at 25.)  Thus, when Safe Harbor made its investment in Arrowhead, it wired $6 million (three payments of $2 million each) to Wells Fargo where it was held in Arrowhead's cash account until Fry directed the money to be used to purchase the secured Notes from Metro.  (*Id.*; Markham Decl., Ex. 1 ("Martens Depo.") at 23–24, Mar. 30, 2020, Docket No. 22-1 (noting Arrowhead was the only company sending money to Metro).)  Once the products the notes secured were delivered to the inventory buyer, the money would flow back the way it came, and investors would benefit.  (*See id.*)

In 2003, approximately one year after its initial investment in Arrowhead and in conjunction with the departure of its managing partner, Safe Harbor redeemed all investments that could be redeemed, including its $6 million investment in Arrowhead. (Decl. of Lew Friedland ¶ 3, Mar. 30, 2020, Docket No. 24.)  Upon redemption of its investment in Arrowhead, Safe Harbor received two wire transfers totaling $6,898,923.39: a net gain of $898,923.39 (or approximately 15%) on its initial investment of $6 million. (Compl., Ex. C at 239, Mar. 3. 2020, Docket No. 1-1.)

Five years later, in 2008, it was discovered that Metro was one of many special purpose entities set up by Petters and PCI to perpetuate a multi-billion-dollar Ponzi scheme.  (Martens Depo. at 12, 21–22.)  The scheme worked as follows: Arrowhead would attract new investors whose money was sent to Metro; Metro would then send the money to PCI, which would use that money to pay off the matured Notes held by prior investors.  (*Id.* at 20–24.)  Once the new money dried up, the scheme imploded.  (*Id.* at 23.)  Petters was criminally prosecuted, convicted, and sentenced to 50 years in federal prison.  (Compl. ¶ 41.)

## III.    PROCEDURAL BACKGROUND

On August 25, 2017, Kelley filed this action against Safe Harbor in Bankruptcy Court, alleging that the transfers from Arrowhead to Safe Harbor in the amount of

$6,898,923.39 were recoverable under 11 U.S.C. §§ 550–51 and Minn. Stat. § 513.48(b). (*Id.* ¶¶ 93–97.)

On January 24, 2018, the Bankruptcy Court denied Safe Harbor's Motion to Dismiss via oral order.  (Order Denying Mot. to Dismiss, Ex. 18, Mar. 3, 2020, Docket No. 1-18.)

On March 28, 2018, in a separate case Kelley instituted against Arrowhead, the Bankruptcy Court ordered that transfers from Metro to Arrowhead in the amount of approximately $1 billion, including the approximately $6.9 million that was subsequently transferred from Arrowhead to Safe Harbor, were avoidable.[3]  (Markham Decl., Ex. 10, at 2–3, Mar. 30, 2020, Docket No. 22-10.)  The Bankruptcy Court entered default judgment against Arrowhead, as it had failed to answer the complaint or otherwise defend itself.  (*Id.*)

On March 3, 2020, with respect to Kelley's adversary proceeding against Safe Harbor, the Bankruptcy Court determined that Safe Harbor was entitled to a jury trial and timely demanded such a trial, so it transferred the proceeding to this Court.  (Transfer of Adversary Proceeding, Mar. 3, 2020, Docket No. 1.)

---

[3] To "avoid" a transfer is to invalidate it.  *See Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 887–88 (2018) ("To maximize the funds available for, and ensure equity in, the distribution to creditors in a bankruptcy proceeding, the Bankruptcy Code gives a trustee the power to invalidate a limited category of transfers by the debtor or transfers of an interest of the debtor in property. . . . referred to as 'avoiding powers.'").

On March 30, 2020, Safe Harbor filed the present Motion for Summary Judgment, asserting that summary judgment should be granted because (1) Safe Harbor is immune pursuant to §546(e) of the Bankruptcy Code; (2) Kelley's claim is time-barred pursuant to the three-year applicable Delaware statute of repose; and (3) the "good faith" exception pursuant to § 550(b) applies to shield Safe Harbor from Kelley's claims.

## DISCUSSION

### I.   STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986).  The nonmoving party may not rest on mere allegations or denials but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  *Anderson*, 477 U.S. at 256 (citing Fed. R. Civ. P. 56(e)).

## II.   ANALYSIS

### A.  Issue Preclusion ("Collateral Estoppel")

As an initial matter, the parties dispute whether Safe Harbor is precluded from raising a § 546(e) affirmative defense due to the default judgment in Kelley's action against Arrowhead.

"Collateral estoppel, also known as 'issue preclusion,' provides that when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit."  *In re T.G. Morgan, Inc.*, 394 B.R. 478, 484 (B.A.P. 8th Cir. 2008) (quoting *In re Anderberg-Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997)).[4]  Default judgments do not generally "give rise to collateral estoppel. . . . [because] 'none of the issues [are] actually litigated.'"  *Seibert v. Cedar Rapids Lodge & Suites, LLC*, 583 B.R. 214, 219–20 (D. Minn. 2018), *appeal dismissed*, No. 18-2058, 2018 WL 6039905 (8th Cir. Aug. 28, 2018) (collecting cases and quoting

---

[4] *See also Chavez v. Weber*, 497 F.3d 796, 803–04 (8th Cir. 2007) (noting that the doctrine of collateral estoppel does not apply when the party sought to be precluded was not a party or in privity with a party to the original action).

*Arizona v. California*, 530 U.S. 392, 414 (2000)).  The only exception to the rule is when the party against whom preclusion is sought "substantially participated in the prior litigation before the default judgment." *Id.* at 220.

It is undisputed that Safe Harbor was not a party to, nor involved in, the prior litigation Kelley brought against Arrowhead.  Accordingly, the Court finds that Safe Harbor is not precluded from raising a § 546(e) affirmative defense due to the default judgment entered against Arrowhead.

### B.  Immunity Pursuant to § 546(e)

Section 546(e)[5] of the Bankruptcy Code provides that "the trustee may not avoid . . . a transfer made by or to (or for the benefit of) a . . . financial institution, . . . in connection with a securities contract, as defined in section 741(7)." *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 78 (2nd Cir. 2019) (citing 11 U.S.C. § 546(e)). Though the default judgment entered against Arrowhead in the separate matter avoided the transfer from Metro to Arrowhead, Safe Harbor, as a subsequent transferee, may now assert any defense that could have been raised by Metro or Arrowhead in the prior proceeding, including that the transfer falls under the § 546(e) exception. *See, e.g.*, *Sec.*

---

[5] Courts often refer to § 546(e) as a "safe harbor" provision that limits the general avoiding powers of a bankruptcy trustee. *See, e.g.*, *Merit Mgmt. Grp.*, 138 S. Ct. at 888.  Defendant here is also named Safe Harbor.  To avoid confusion, the Court will refrain from referring to § 546(e) as a "safe harbor."

*Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 480 B.R. 501, 522 (Bankr. S.D.N.Y. 2012) (noting due process requires the allowance of a subsequent transferee to contest the avoidability of the initial transfers).  For § 546(e) to be applicable, Safe Harbor must show (1) that Arrowhead or Metro is a "financial institution," and (2) that the Note Purchase Agreement between Arrowhead and Metro can properly be classified as a "securities contract."

### 1.  Financial Institution

Section 101(22) of the Code defines "financial institution" to include "an entity that is a commercial or savings bank" and when a bank "is acting as agent or custodian for a customer . . . in connection with a securities contract" the customer also qualifies as a "financial institution."  11 U.S.C. § 101(22)(A); *see In re Tribune Co.*, 946 F.3d at 77–78 (holding that a "customer" of a "financial institution" is a covered entity protected by § 546(e)).[6] It is undisputed that Wells Fargo (1) is a commercial bank and (2) was acting as custodian for Arrowhead, its customer.  Accordingly, Arrowhead is a "financial institution" under § 546(e).

---

[6] *See also Holliday v. K Road Power Mgmt., LLC (In re Bos. Generating LLC)*, 2020 Bankr. LEXIS 1593, at *106 (Bankr. S.D.N.Y. June 18, 2020) ("The customer of a 'financial institution will itself qualify as a 'financial institution' under section 546(e) of the Bankruptcy Code if, (i) the 'financial institution' acts as its customer's agent, (ii) in connection with a securities contract.").

## 2. Securities Contract

Section 741(7)(A) of the Bankruptcy Code defines "securities contract" as "a contract for the purchase, sale, or loan of a security. . . ." 11 U.S.C. § 741(7)(A).  The term "security" is defined in § 101(49) of the Bankruptcy Code to include a "note."  11 U.S.C. § 101(49).

Because these definitions include "a contract for the purchase . . . of a [note]," the Note Purchase Agreement here fits plainly within the statutory definition of a securities contract for purposes of § 546(e).[7]  Although the Eighth Circuit has not decided the question, the Second Circuit has reached the same conclusion which the Court finds persuasive.  *See In re Quebecor World (USA) Inc.*, 719 F.3d 94, 98–99 (2nd Cir. 2013) ("The [Note Purchase Agreements] were clearly 'securities contracts' because they provided for

---

[7] The Bankruptcy Court previously rejected a similar argument from Safe Harbor at the motion to dismiss stage and found that the Note Purchase Agreement was not a securities contract. (Bankruptcy Transcript, Mar. 3, 2020, Docket No. 4-1. ("Counsel is asking this Court to adopt a rather tortuous argument and stretch the definition of 'securities' to include notes or loans, which would include virtually any kind of debt instrument, and has cited no case that goes that far.'").)  Kelley appears to argue that the law-of-the-case doctrine applies, and that the Court should follow the Bankruptcy Court's decision.  The law-of-the-case doctrine "requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy." *Murphy v. FedEx Nat. LTL, Inc.*, 618 F.3d 893, 905 (8th Cir. 2010) (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995).  However, the doctrine "only applies to final orders, not interlocutory orders." *Id.* (citing *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008).  As a general rule, an order denying a motion to dismiss is interlocutory.  *In re Coleman Enterprises, Inc.*, 275 B.R. 533, 537 (B.A.P. 8th Cir. 2002) (citing *Dunkley v. Rega Props, Ltd. (In Rega Props., Ltd.*, 894 F.2d 1136, 1138 n. 4 (9th Cir. 1990) (holding that a Bankruptcy Court order denying a motion to dismiss is an interlocutory order).  As such, the Court declines to apply the law-of-the-case doctrine here.

both the original purchase and the 'repurchase' of the Notes.").  The Court also finds Kelley's argument that the "notes" purchased here were simply loans like those one would get from a bank unpersuasive.

In sum, the Court finds that, by the plain language of the Bankruptcy Code, (1) Arrowhead is a "financial institution" and (2) the Note Purchase Agreement is a securities contract.  Because there is no dispute that the transfer Kelley is seeking to avoid (from Metro to Arrowhead) was made "in connection" with the Note Purchase Agreement, the transfer qualifies for § 546(e)'s exception.  Accordingly, the Court will grant Safe Harbor's Motion for Summary Judgment finding § 546(e) immunity applies to the funds at issue.[8]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Safe Harbor's Motion for Summary Judgment [Docket No. 20] is **GRANTED**.

---

[8] The Court would deny Summary Judgment on Safe Harbor's remaining arguments.  First, Federal law applies because Delaware's statute of repose conflicts with § 550(f)'s statute of limitations and impedes Congressional intent.  *See In re EPD Inv. Co., LLC*, 523 B.R. 680, 691 (B.A.P. 9th Cir. 2015) ("Congress has expressed an intent to regulate bankruptcy and maximize the bankruptcy estate for the benefit of creditors."); *In re City of Stockton, California*, 526 B.R. 35, 50 (Bankr. E.D. Cal. 2015) ("The Supremacy Clause operates to cause federal bankruptcy law to trump state laws, including state constitutional provisions, that are inconsistent with the exercise by Congress of its exclusive power to enact uniform bankruptcy laws.").  Second, because Safe Harbor admits that it did not conduct proper due diligence before investing in Arrowhead, a dispute of fact remains as to whether the good faith affirmative defense applies.  *See, e.g.*, *In re Petters Company, Inc.*, 562 B.R. 391, 402 (Bankr. D. Minn. 2016) ("A finding of good faith is 'primarily a factual determination.'") (citing *In re Armstrong*, 285 F.3d 1092, 1096 (8th Cir. 2002).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  October 6, 2020
at Minneapolis, Minnesota.

                                     JOHN R. TUNHEIM
                                      Chief Judge
            United States District Court